United States District Court
Southern District of Texas
**ENTERED**
September 19, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | CRIMINAL ACTION NO. H-01-521-1 |
| § | |
| § | |
| § | |
| VIDAL MATEO § | |

**MEMORANDUM OPINION AND ORDER**

Representing himself, federal prisoner Vidal Mateo, (BOP # 97808-079), filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release from his prison sentence. (Docket Entry No. 443). The court appointed counsel for Mateo, (Docket Entry No. 444), and Mateo filed an amended motion through counsel. (Docket Entry No. 448). The government filed a response, (Docket Entry No. 450), and Mateo filed a reply. (Docket Entry No. 451). After carefully reviewing Mateo's motion and amended motion, the responses and replies, the record of his underlying criminal case, and the applicable law, the court denies the motions. The reasons are explained below.

**I.     Background**

In April 2002, Mateo was convicted of one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine, one count of possession with intent to distribute more than five kilograms of cocaine, and one count of possession with intent to distribute more than 500 grams of cocaine. (Docket Entry No. 140). The Presentence Report describes Mateo as one of the leaders of a drug-trafficking organization that obtained cocaine from Mexico and transported it, in quantities totaling between 300 and 400 kilograms, from Houston, Texas, to Louisiana, Tennessee, Georgia, Pennsylvania, Massachusetts, New York, Wisconsin, and New

Jersey between 1999 and June 2001. (Docket Entry No. 162, pp. 5, 14). The street value of the cocaine totaled between $30,000,000 and $40,000,000. (*Id.* at 14).

In February 2003, the court sentenced Mateo to life in prison on the conspiracy and distribution counts and 360 months in prison on the attempted distribution count. (Docket Entry No. 195). The Fifth Circuit affirmed Mateo's convictions and sentences. *See United States v. Mateo*, 85 F. App'x 355 (5th Cir. 2003), *cert. denied*, 541 U.S. 952 (2004). In May 2015, the court reduced Mateo's life sentences to 360 months in prison followed by five years' supervised release under the First Step Act. (Docket Entry No. 417). To date, Mateo has spent more than 20 years in prison. His current anticipated release date is March 14, 2027. *See* www.bop.gov/inmateloc/ (last visited Sept. 14, 2022).

In September 2021, Mateo filed a motion for compassionate release under 28 U.S.C. § 3582(c)(2), seeking to be released from the remainder of his sentence and placed on supervised release due to his health conditions and his risk of contracting the COVID-19 virus. (Docket Entry No. 443). Mateo alleged that he suffers from prostate cancer, high blood pressure, sleep apnea, and obesity. (*Id.* at 4-5). He also alleged that he had contracted the COVID-19 virus and continued to suffer from its lingering effects. (*Id.* at 4). As an additional basis for relief, he directed the court's attention to his perfect disciplinary record and his rehabilitation efforts. (*Id.* at 4-5).

The court appointed counsel to represent Mateo, (Docket Entry No. 444), and counsel filed an amended motion for compassionate release. (Docket Entry No. 448). The amended motion relies on Mateo's health conditions and the risks associated with the COVID-19 pandemic as grounds for his release. (*Id.* at 2-19). The government opposes the motion, contending that Mateo has not shown that extraordinary and compelling reasons justify his early release. (Docket Entry No. 450).

## II. Analysis

Mateo asks this court to reduce his sentence either by amending his sentence to one of time served or by ordering him to serve the remainder of his sentence on home confinement.[1] Courts generally "may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting § 3582(c)). But a court may grant a defendant's motion for compassionate release if "extraordinary and compelling reasons" justify a reduction. *See United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (citing § 3582(c)(1)(A)(i)). If a court finds an extraordinary and compelling reason for compassionate release, it must then "provide specific factual reasons, including but not limited to due consideration of the [18 U.S.C.] § 3553(a) factors, for its decision" to reduce the sentence. *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted). If the court does not find an extraordinary and compelling reason for a sentence reduction, it need not consider the § 3553(a) factors. *See Dillon*, 560 U.S. at 826-27.

Mateo contends that his multiple health conditions, coupled with the risks posed by the COVID-19 pandemic, are extraordinary and compelling reasons that warrant reducing his sentence. Courts granting compassionate release based on a defendant's health conditions have generally "done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *United States v. Thompson*, 984 F.3d 431, 434-35 (5th Cir.), *cert. denied*, 141 S. Ct. 2688 (2021). Compassionate release typically does not extend to healthy defendants or those with well-managed health conditions. *Id.* at 435 (affirming denial

---

[1]Before filing a compassionate release motion under 18 U.S.C. § 3582(c), a prisoner must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [wait for] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Mateo alleges, and the government does not dispute, that he fully exhausted his administrative remedies before filing this motion.

of compassionate release to a defendant with medically controlled high blood pressure and high cholesterol, and a history of stroke); *see also United States v. Sullivan,* 858 F. App'x 790, 791 (5th Cir. 2021) (affirming denial of compassionate release to a defendant whose high blood pressure and high cholesterol did "not seem extraordinary, even in the context of COVID-19 in a prison setting"); *United States v. Miller*, 855 F. App'x 949 (5th Cir. 2021) (affirming denial of compassionate release to a defendant with obesity and high blood pressure); *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (affirming denial of compassionate release to an obese defendant with medically controlled high blood pressure); *United States v. Cash*, No. CR 2:06-283, 2021 WL 1978938 (S.D. Tex. May 17, 2021) (denying compassionate release to a defendant suffering from multiple medical conditions, including high blood pressure, diet-controlled diabetes, and obesity); *United States v. Martinez-Arias*, No. 2:11-cr-598, 2020 WL 5210938 (S.D. Tex. Sept. 1, 2020) (denying compassionate release to a defendant with diabetes, high blood pressure, and high cholesterol).

Mateo's health conditions, which include high blood pressure, sleep apnea, and obesity, appear well-controlled based on his medical records. (Docket Entry Nos. 448-2; 450-2). While he has recently been diagnosed with prostate cancer, he presents no evidence that his cancer is metastatic so as to qualify as a terminal illness. *See* U.S.S.G. § 1B1.13 n.1 (defining an extraordinary and compelling medical condition as one that is terminal, such as a "metastatic solid-tumor cancer"). And the diagnosis of non-metastatic prostate cancer, even in combination with other health conditions, is insufficient to constitute an extraordinary and compelling condition. *Compare United States v. McFadden,* No. 20-40801, 2022 WL 715489 (5th Cir. Mar. 9, 2022) (affirming denial of compassionate release to an inmate concerned about the risks of COVID-19 and suffering from diabetes, high blood pressure, prostate cancer, and end-stage renal disease);

4

*United States v. Sanchez-Partida,* No. 2:09-cr-00378-001, 2022 WL 2118975 (S.D. Tex. June 13, 2022) (denying compassionate release to an inmate concerned about the risks of COVID-19 and suffering from high blood pressure, hyperlipidemia, diabetes, and "possible prostate cancer"); *United States v. Mendoza-Garibay,* No. 4:13-cr-00281, 2022 WL 2673231, at *6 (E.D. Tex. July 11, 2022) (diagnosis of prostate cancer, high blood sugar, and high cholesterol was not an extraordinary or compelling circumstance warranting compassionate release, even when combined with the risks of the COVID-19 virus); *and United States v. Reed*, 464 F. Supp. 3d 854, 861 (E.D. La. 2020) (denying compassionate release to an inmate with high blood pressure, diabetes, coronary artery disease, and prostate cancer when the medical records showed that he was receiving medical care for all conditions and that his ability to provide self-care was not substantially diminished); *with United States v. Heitman*, No. 3:95-cr-0160(4)-G, 2020 WL 3163188 (N.D. Tex. June 12, 2020) (granting compassionate release to a 71-year-old inmate with Stage IV metastatic prostate cancer due to his susceptibility to the COVID-19 virus).

Mateo indicates that he is receiving radiation treatment for his prostate cancer in prison, and his other medical conditions are treatable and medically controlled. His prison record indicates that he is at Care Level 1 and able to provide for self-care and participate in activities of daily living. (Docket Entry No. 443-1, p. 2). While his medical conditions are serious, the court does not find that, even considered in combination with the risk of the COVID-19 virus, they present an extraordinary and compelling reason sufficient to warrant compassionate release.

In addition, Mateo's fear that he may still contract the COVID-19 virus is not an extraordinary or compelling reason to grant compassionate release. While Mateo alleged in his initial motion that he had already contracted the virus, (Docket Entry No. 443, p. 4), his medical records do not support this allegation. (Docket Entry No. 448-2). And his risk of contracting the

virus now is low. Mateo is serving his sentence at FCI McKean, where 2 inmates and 5 staff members currently test positive for COVID-19. *See* BOP COVID-19 Resource Page, www.bop.gov/coronavirus/ (last visited Sept. 14, 2022). Since the pandemic began, 390 inmates and 41 staff members at FCI McKean have contracted and recovered from COVID-19, and no inmates or staff members have died. *Id.* BOP is actively taking steps to try to reduce the threat of further COVID-19 infections in its facilities, and 58 staff members and 998 inmates at FCI McKean have now been fully vaccinated. *See* BOP COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 14, 2022). In addition, all inmates have been offered booster vaccines in accordance with the CDC guidelines. *Id.* Mateo's medical records show that after initially refusing the COVID-19 vaccination, he has now received both doses. (Docket Entry No. 448-2, pp. 137-38, 160). While the court acknowledges the serious risks of COVID-19 in general and the possibility of reinfection even after vaccination, the "[f]ear of COVID doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435.

The court is sympathetic to Mateo's health conditions and to his concerns about the COVID-19 virus. But Mateo has not established that his health conditions present an extraordinary and compelling reason to grant his motion for compassionate release. He is not entitled to compassionate release on this basis.

### III. Conclusion

Vidal Mateo's motion and amended motion for compassionate release, (Docket Entry Nos. 443, 448), are denied.

SIGNED on September 16, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge